## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

CITIGROUP INC.,                                        )
                                                       )
      Plaintiff,                               )
                                                       )
      v.                                       )
                                                       )
The Internet Domain Names                              )
<citibankaccountonline.com>,                           )
<citibankautofinance.com>,                             )
<citibankbanamex.com>,                                 )    Civil Action No. 1:09cv0277 (GBL/JFA)
<citibankcreditcardonline.com>,                        )
<citibankmerchantservices.com>,                        )
<citibankonlime.com>, <citibankpayment.com>,           )
<citibankthankyou.com>, <citicardmember.com>,          )
<citidank.com>, <citifinancialquto.com>,               )
<citifinancialservicesinc.com>,                        )
<citifininancialauto.com>, <citigroupdesktop.com>,)
<citimortgqge.com>,                                    )
<citiplatinumselectmastercard.com>,                    )
<citisears.com>, <citifinacial.net>, <citigoup.net>, )
<citifinance.com>, and <miciti.com>,                   )
                                                       )
      Defendants.                              )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

      This matter is before the court on plaintiff's motion for default judgment pursuant to Fed.

R. Civ. P. 55(b)(2).  (Docket no. 11).  In this *in rem* action involving the domain names

<citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>,

<citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>,

<citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>,

<citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>,

<citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>,

<citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com>, and <miciti.com> (the

"Domain Names"), the plaintiff Citigroup Inc. ("Citigroup") seeks a default judgment ordering

that the registry change the registrars for the Domain Names from their current registrars to a

registrar selected by Citigroup so that Citigroup can enter into registration agreements with that

registrar for the Domain Names.  Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned

magistrate judge is filing with the court his proposed findings of fact and recommendations, a

copy of which will be provided to all interested parties.

### Procedural Background

On March 12, 2009, Citigroup brought this action pursuant to the Anticybersquatting

Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").  (Docket no. 1).  On March 13, 2009

Citigroup sent a registered email to Lead Networks Domains Pvt. Ltd. ("Lead Networks"), the

registrar of each of the Domain Names at the time the complaint was filed, attaching a file-

stamped copy of the original complaint and requesting that Lead Networks lock the registrations

for the Domain Names.[1]  (Docket no. 5, p. 2).  Also on March 13, 2009 Citigroup sent a

registered email to VeriSign, Inc., the registry for each of the Domain Names, attaching a copy

of the complaint.  (Docket no. 5, p. 3).  On April 4, 2009 Citigroup filed its amended complaint

to correct a clerical error.  (Docket no. 3).  On May 21, 2009 Citigroup filed a motion for an

order to publish notice of action together with a memorandum in support, and noticed it for

hearing on June 12, 2009.  (Docket nos. 4-6).  On June 11, 2009 an Order was entered directing

Citigroup to provide notice of this action by publication in accordance with the ACPA.  (Docket

no. 7).  The notice of action was published on June 15, 2009 and on June 25, 2009 Citigroup

filed with the court an affidavit describing compliance with the Order directing publication of

---

[1] Despite Citigroup's request that Lead Networks lock the Domain Name registrations, it appears that the registrant information has changed for the majority of the Domain Names since the complaint was filed. At the time the complaint was filed, nineteen of the domain names listed the registrar "Private Whois Escrow Domains Private Limited," one listed the registrar "Private WHOIS FOR CITIFINANCE.COM," and one listed the registrar "PRIVATE WHOIS FOR MICITI.COM."

notice of this action. (Docket no. 8). Other than the claim made by Citigroup, no response, claim or other pleading has been filed asserting any rights in any of the Domain Names. On July 9, 2009 Citigroup filed its request for entry of default (Docket no. 9) and the Clerk of Court entered default against the Domain Names on July 10, 2009 (Docket no. 10). On July 16, 2009 Citigroup filed its motion for default judgment and noticed it for a hearing on August 14, 2009. (Docket nos. 11, 12). On August 14, 2009 counsel for Citigroup appeared at the hearing on the motion for default judgment before the undersigned magistrate judge and no claimant appeared on behalf of any of the Domain Names. On August 20, 2009 and August 21, 2009 counsel for the plaintiff filed supplemental declarations in support of the motion for default judgment. (Docket nos. 14, 15).

### Factual Background

The following facts are established by the amended complaint[2] (Docket no. 3) and the motion for default judgment with its supporting declaration from Sara B. Blotner ("Blotner Decl.") (Docket no. 11). Citigroup is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in New York. (Compl. ¶ 2). At the time the amended complaint was filed, nineteen of the Domain Names were registered to Private Whois Escrow Domains Private Limited ("Private Whois"). (Compl. ¶ 3, Ex. 1). Private Whois' address, as listed in the domain name registrations, was 707, C-Wing, 7th Floor, The Neptune Versova Society, Lokhandwala Complex, 4th Cross Road, Andheri (West), Mumbai, Maharashtra, 400053, IN. (Compl. Ex. 1). The domain name <citifinance.com> was registered to Private WHOIS FOR CITIFINANCE.COM, the address of which was B-304, Florida, Y-11, Shastrinagar, Lokhandwala Complex, Andheri (West), Mumbai, Maharashtra, 400053, IN. (Compl. Ex. 1). The domain name <miciti.com> was registered to PRIVATE WHOIS FOR

---

[2]   Citations to the amended complaint are noted as "Compl. ¶ _".

3

MICIT1.COM, the address of which was B-304, Florida, Y-11, Shastrinagar, Lokhandwala Complex, Andheri (West), Mumbai, Maharashtra, 400053, IN. (Compl. Ex. 1). The status of <citifinance.com> and <miciti.com> was "Locked". The status of each of the other nineteen domain names was "Active." (Compl. Ex. 1).

Citigroup is a financial services company that provides such services throughout the world. (Compl. ¶ 7, Blotner Decl. ¶ 3). Citigroup owns a family of trademarks and service marks comprised of or featuring the trademarks "CITI" and "CITIBANK" (the "CITI Marks"). (Compl. ¶ 1, Blotner Decl. ¶ 3). Citigroup operates its internet banking services through domain names such as <citi.com>, <citibank.com>, and <citibankonline.com>. (Compl. ¶ 1, Blotner Decl. ¶ 4). Among other applications and registrations, Citigroup registered the CITI mark on December 8, 1981 for "financial services including consumer and commercial lending, credit card services, real estate services, investment and advisory services and providing venture capital to others" (U.S. Reg. No. 1,181,467 (incontestable)). (Compl. ¶ 8, Ex. 2, Blotner Decl. ¶ 5). In addition, Citigroup registered the mark CITIBANK on January 19, 1960 for "banking services," and it has been in continual use since February 2, 1959 (U.S. Reg. 691,815 (incontestable)). (Compl. ¶ 9, Ex. 3, Blotner Decl. ¶ 6). The CITI Marks are either applied for or registered in approximately two-hundred (200) countries around the world. (Compl. ¶ 10, Blotner Decl. ¶ 7). Citigroup asserts that the CITI Marks represent to the consuming public the goods and services offered by Citigroup, and Citigroup has made extensive use of the CITI Marks by providing its services throughout the world, including in the United States. (Compl. ¶¶ 11, 12, Blotner Decl. ¶¶ 8, 9). The CITI Marks have become famous both in the United States and worldwide through Citigroup's extensive use and registration of the CITI Marks. (Compl. ¶ 12). Citigroup has spent substantial sums advertising the CITI Marks. (Blotner Decl. ¶ 10).

Subsequent to Citigroup's use or registration of the CITI Marks in the United States, nineteen of the Domain Names were registered to Private Whois on dates ranging between December 18, 2006 and March 6, 2007. Those nineteen domain names all list the same contact email address hosted by Private Whois (PRIVATE31181008@privatewhois.in), which Citigroup contends constitutes evidence that a single person or entity is responsible for their registration. (Compl. ¶ 13, Ex. 1). In addition, <citifinance.com> was registered to Private WHOIS FOR CITIFINANCE.COM on September 16, 2005, and <miciti.com> was registered to PRIVATE WHOIS FOR MICITI.COM on May 13, 2004. (Compl. Ex. 1). Each of those domain names has a different contact email address, but both are also hosted by Private Whois (citifinance.com@privatewhois.in and MICITI.COM@privatewhois.in). Despite Lead Networks' obligation to lock the registrations for the Domain Names upon receiving a file-stamped copy of the complaint, it apparently permitted alteration of the registration information for several of the Domain Names. The majority of the Domain Names are now registered through a different privacy service, PrivacyProtect.org. (Blotner Decl. ¶ 12). The registry for each of the Domain Names is VeriSign, Inc. located in Virginia. (Compl. ¶ 14, Blotner Decl. ¶ 13). The Domain Names each include Citigroup's CITI mark in its entirety, and many of the Domain Names include Citigroup's CITIBANK mark in its entirety. (Compl. ¶ 15, Blotner Decl. ¶ 14). Citigroup claims that the Domain Names are confusingly similar to, and dilutive of, the CITI Marks, and violate its exclusive trademark and service mark rights in the United States and abroad. (Compl. ¶ 15, Blotner Decl. ¶ 15). No party has responded to Citigroup's attempts to contact the registrants of the Domain Names, and despite its due diligence, Citigroup has failed to identify anyone over whom personal jurisdiction could be asserted or who would be a defendant in this matter. (Blotner Decl. ¶ 16).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to any of the Domain Names in a timely manner, the Clerk has entered a default. (Docket no. 10).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Citigroup's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the Domain Names under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Citigroup owns the federally-registered trademarks CITI and

6

CITIBANK, and it claims that its rights in those marks are being violated by the registration and use of the Domain Names. The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA, or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). After numerous good faith attempts, Citigroup has been unable to locate the listed registrants of the Domain Names and is unable to obtain personal jurisdiction over the named registrants, who otherwise would be the named defendants in this action, as it appears that all of the listed registrants lack the requisite minimum contacts with the United States.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc., which has offices within this district and division, is the exclusive registry controlling the top-level domains <.com> and <.net>, including the Domain Names.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the defendant Domain Names and that venue is proper in this court.

### Service

At the time Citigroup filed the amended complaint, each of the Domain Names was registered through the registrar Lead Networks Domains Pvt. Ltd. in the name of Private Whois (Lead Networks' wholly-owned and self-run privacy service). (Docket no. 5, p. 2). On March 13, 2009, counsel for Citigroup sent a registered email to Lead Networks attaching a file stamped

copy of the complaint and requesting that Lead Networks lock the registrations for the Domain

Names. (Docket no. 5 at p. 3, Ex. A). On March 13, 2009 Citigroup's counsel also sent a copy

of the complaint by registered email to VeriSign, Inc. (Docket no. 5 at p. 3, Ex. B). On April

24, 2009 counsel for Citigroup mailed the amended complaint to the postal address associated

with Private Whois, 707, C-Wing, 7th Floor, The Neptune Versova Society, Lokhandwala

Complex, 4th Cross Road, Andheri (West), Mumbai, Maharashtra, IN. (Docket no. 15, Second

Elster Decl. ¶ 5). On the same day counsel for Citigroup transmitted a copy of the amended

complaint to the new registrant of nineteen of the Domain Names, <PrivacyProtect.org>, by the

procedure set forth by that registrar for contacting individual registrants of each Domain Name.

(Docket no. 5 at p. 3, Declaration of Maria Scavo ¶¶ 3-5). The electronic submission process

found at the website of <PrivacyProtect.org> is the only process available to contact individual

domain name registrants. (Scavo Decl. ¶ 6). On May 21, 2009 Citigroup filed its Motion for an

Order to Publish Notice of Action. (Docket no. 4). Pursuant to the court's June 11, 2009 Order

to Publish Notice of Action Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb) (Docket no. 7),

Citigroup published notice of this action in *The Washington Times* on June 15, 2009. (Docket

no. 8). As set forth in the notice of action, any person claiming an interest in the defendant

domain name was required to file an answer or other response to the complaint within twenty

(20) days from the date of the publication of the Order in *The Washington Times.* The twenty-

day time period for filing an answer or claim expired on July 6, 2009.[3] On August 17, 2009

counsel for Citigroup mailed copies of the amended complaint, order of publication, affidavit of

publication and motion for default judgment to the postal addresses listed as the registrants'

contact information for <miciti.com> and <citifinance.com>. (Docket no. 14, Elster Decl. ¶ 5).

---

[3] Since July 5, 2009 was a Sunday, the deadline for filing any answer or claim expired on July 6, 2009.

Counsel obtained those addresses by searching Lead Networks' website, which is the registrar of those domain names. (Elster Decl. ¶ 4).

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and email address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Citigroup has complied with these provisions, and has further provided notice to the current registrant, <PrivacyProtect.org>, for each Domain Name as to which the registrant was changed subsequent to the filing of the complaint. For these reasons the undersigned recommends a finding that service of process has been accomplished in this action.

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a) and as stated in the Notice of Action, anyone asserting a claim to the defendant Domain Names was required to file an answer or response with the Clerk by July 6, 2009. No responsive pleading or claim was filed by either a named registrant or anyone else claiming ownership to the Domain Names and on July 9, 2009, Citigroup filed its request for entry of default. (Docket no. 9). The Clerk of the Court entered a default on July 10, 2009. (Docket no. 10). The motion for default judgment and the notice of hearing for August 14, 2009, were filed on July 16, 2009. (Docket nos. 11, 12).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the defendant Domain Names in a timely manner and that the Clerk properly entered a default as to <citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>, <citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>,

<citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>,

<citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>,

<citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>,

<citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com>, and <miciti.com>.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or

exceed in amount, what is demanded in the pleadings." Because no responsive pleading was

filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

The relief sought in the complaint is for the court to order VeriSign, Inc. to change the registrars

from the current registrars to a registrar of Citigroup's choosing, who shall then transfer the

registrations for the Domain Names to Citigroup. The notice that was published pursuant to the

ACPA provided that one of the remedies available under the ACPA was the transfer of the

Domain Names to the plaintiff in this action. (Docket nos. 7, 8).

To state a claim under the ACPA, Citigroup must prove that the Domain Names and/or

their registrant(s) registered, trafficked in, or used the Domain Names with a bad faith intent to

profit and that the Domain Names are either identical or confusingly similar to a distinctive mark

owned by Citigroup, or, upon a finding that a mark owned by Citigroup is famous, that the

Domain Names are identical or confusingly similar to, or dilutive of, Citigroup's famous mark.

*See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v.*

*Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registrations of the CITI Marks on the

Principal Register are *prima facie* evidence that the marks are at least descriptive and have

acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir.

2001). Moreover, registration numbers 1,181,467 and 691,815 for the CITI Marks (which are

incontestable under 15 U.S.C. § 1065) provide conclusive evidence of distinctiveness.  15 U.S.C. § 1115(b); *Park 'N Fly, Inc v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985).  Further, secondary meaning is typically found where there are extensive advertising expenditures, consumer studies linking a mark to a source, sales successes, unsolicited media coverage, attempts to plagiarize a mark, and where a mark has been used exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Here, Citigroup registered its CITI mark, U.S. Reg. No. 1,181,467, for financial services including consumer and commercial lending, credit card services, real estate services, investment and advisory services and providing venture capital to others on December 8, 1981.  Citigroup registered its CITIBANK mark on January 19, 1960, and it has been used continuously in interstate commerce in connection with banking services since February 2, 1959.  Citigroup has invested substantial sums in advertising the CITI Marks and has made extensive use of the CITI Marks by providing its services throughout the United States and abroad, including operating its Internet banking services through various domain names such as <citi.com>, <citibank.com>, and <citibankonline.com>.  Through Citigroup's considerable investments in the CITI Marks, Citigroup has achieved substantial goodwill in the CITI Marks.  Accordingly, the CITI Marks are widely recognized by the consuming public throughout the United States and abroad as a source designation for goods and services offered by Citigroup and its affiliates and/or licensees, and is therefore a famous mark within the meaning of 15 U.S.C. § 1125(c)(2)(A).  For these reasons the undersigned magistrate judge recommends a finding that the CITI Marks are distinctive and famous.

The next consideration is whether the Domain Names are identical or confusingly similar to, or dilutive of, the CITI Marks.  Based on the uncontested allegations in the complaint and the

Blotner Declaration, the undersigned magistrate judge recommends a finding that each of the Domain Names is confusingly similar to the CITI Marks. The registration and use of each Domain Name is likely to cause confusion among the public, including customers of Citigroup, because the "dominant or salient portions" of one or both of the CITI Marks and <citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>, <citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>, <citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>, <citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>, <citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>, <citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com>, and <miciti.com> are identical. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location.").

The undersigned magistrate judge also recommends a finding that the Domain Names are dilutive of the CITI Marks. As noted above, the facts presented by Citigroup support a finding that the CITI Marks are famous. Where a plaintiff's famous trademark is used in a domain name, courts have found dilution as a matter of law. *See Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070, at *4 (E.D. Va. April 9, 2001) (finding that the domain <tropicanacasino.com> diluted plaintiff's registered TROPICANA mark). "Because of the

12

unique nature of domain names in electronic commerce and the resulting economic harm when marks are registered as domain names by cyberpirates," the use of the CITI Marks in <citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>, <citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>, <citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>, <citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>, <citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>, <citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com>, and <miciti.com> constitutes dilution. *Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 431-32 (M.D.N.C. 2003) (finding that the domains <pinehurstresort.com> and <pinehurstresorts.com> diluted plaintiff's registered PINEHURST and PINEHURST RESORT AND COUNTRY CLUB marks). A customer using the Internet would be "unable to discern any appreciable difference" between the Domain Names and the CITI Marks. *Id.*; *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003) (finding the use of "GMATPLUS" in the domain names <gmatplus.com> and <gmatplus.net> dilutive of plaintiff's registered GMAT trademark). Accordingly, the undersigned recommends a finding that the registration and use of <citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>, <citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>, <citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>, <citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>, <citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>, <citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com>, and <miciti.com> are dilutive of the CITI Marks.

Having recommended a finding that the CITI Marks are both distinctive and famous, that the Domain Names are confusingly similar to the CITI Marks, and that the Domain Names are dilutive of the CITI Marks, the remaining question is whether the Domain Names were registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the Domain Names were registered and used with the bad faith intent to profit from the CITI Marks:

1.      The CITI Marks, which have been incorporated into the Domain Names, are distinctive and famous within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2.      No registrant has any valid trademark or intellectual property rights in the CITI Marks or the Domain Names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3.      No Domain Name consists of any registrant's legal name, nor do they in any way identify any registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4       The registrants have not used the Domain Names in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III);

5.      The registrants have not used the Domain Names for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

6.      With respect to at least <miciti.com> and <citifinancial.com>, the registrants' intent in registering and using those domain names was to divert Citigroup's consumers to profit from the fame of Citigroup, and to harm the goodwill of the CITI Marks, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V); and

7.      The registrant for nineteen of the domain names is identical, and while it appears to be a hosting entity designed to protect the privacy of individual registrants, the email contact information is also identical. This fact leads to the conclusion that one individual has registered

14

or acquired multiple domain names known to be confusingly similar to the CITI Marks within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IV).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision"). For these reasons, the undersigned magistrate judge recommends a finding that the registrants' actions have violated the ACPA, and that an order be entered requiring the registry VeriSign, Inc. to change the current registrars for the domain names <citibankaccountonline.com>, <citibankautofinance.com>, <citibankbanamex.com>, <citibankcreditcardonline.com>, <citibankmerchantservices.com>, <citibankonlime.com>, <citibankpayment.com>, <citibankthankyou.com>, <citicardmember.com>, <citidank.com>, <citifinancialquto.com>, <citifinancialservicesinc.com>, <citifininancialauto.com>, <citigroupdesktop.com>, <citimortgqge.com>, <citiplatinumselectmastercard.com>, <citisears.com>, <citifinacial.net>, <citigoup.net>, <citifinance.com> and <miciti.com> to a registrar of Citigroup's choosing so that the registrations for the Domain Names can be transferred to Citgroup.

## NOTICE TO PARTIES

**Failure to file written objections to these proposed findings of fact and recommendations within ten (10) days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District**

Judge except upon grounds of plain error.  A copy of these proposed findings of fact and

recommendations shall be sent to the registrants of the Domain Names at the following

addresses:

> **Private Whois Escrow Domains Pvt., Ltd.**
> **707, C-Wing, 7th Floor, Neptune Versova Society**
> **Lokhandwala Complex, 4th Cross Road**
> **Andheri (West)**
> **Mumbai, Maharashtra, 400053**
> **INDIA**
>
> **PrivacyProtect.org**
> **P.O. Box 97**
> **Moergestel**
> **Null, 5066 ZH**
> **NL   36946676**
>
> **Privacy Protection**
> **B-304, Florida, Y-11, Shastrinagar**
> **Lokhandwala Complex**
> **Andheri (West)**
> **Mumbai, Maharashtra, 400053**
> **INDIA**

Entered this **31st** day of August 2009.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia